# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

In re:                      :        Chapter 11

OLEUM EXPLORATION, LLC,  :        Case No. 5:19-bk-00664 (RNO)

           Debtor.     :

---

## REVISED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
## OLEUM EXPLORATION, LLC AND PAPCO, INC.
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

> **THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE AMENDED PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS JOINT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT, NOR HAS THE BANKRUPTCY COURT APPROVED A DISCLOSURE STATEMENT WITH RESPECT TO THE JOINT PLAN.**

Jeffrey Kurtzman, Esquire
**KURTZMAN | STEADY, LLC**
401 S. 2nd Street, Suite 200
Philadelphia, PA 19147
Telephone: (215) 839-1222
Email: kurtzman@kurtzmansteady.com

Attorneys for Debtor and Debtor-in-Possession

-and –

William F. Savino, Esquire
Bernard Schenkler, Esquire
**WOODS OVIATT GILMAN LLP**
1900 Main Place Tower
350 Main Street
Buffalo, NY 14202
Telephone: (716) 248-3200
Email: wsavino@woodsoviatt.com
        bschenkler@woodsoviatt.com

Attorneys for PAPCO, Inc.

Dated: April 20, 2020

{8088639: }

# TABLE OF CONTENTS

Article I................................................................................................................................2

DEFINED TERMS AND RULES OF INTERPRETATION ...............................................2
    A.    Defined Terms .......................................................................................2
    B.    Rules of Interpretation ..........................................................................8

Article II...............................................................................................................................9

ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND UNITED STATES TRUSTEE
STATUTORY FEES .............................................................................................................9
    A.    Administrative Claims...........................................................................9

Article III. ..........................................................................................................................11

CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................11
    A.    Classification of Claims........................................................................11
    A.    Treatment of Claims and Interests......................................................11
    B.    Special Provision Governing Unimpaired Claims .............................17
    C.    Acceptance or Rejection of the Plan....................................................17
    D.    Nonconsensual Confirmation...............................................................18
    E.    Subordinated Claims ...........................................................................18

Article IV............................................................................................................................18

MEANS FOR IMPLEMENTATION OF THE PLAN .......................................................18
    A.    General Settlement of Claims ..............................................................18
    B.    Restructuring Transactions .................................................................18
    C.    Corporate Existence .............................................................................19
    D.    Vesting of Assets in the Reorganized Debtor......................................19
    E.    Sources for Plan Distributions.............................................................20
    F.    Exemption from Certain Transfer Taxes and Recording Fees...........20
    G.    Managers and Officers of the Reorganized Debtor ...........................20
    H.    Preservation of Rights of Action..........................................................20

Article V. ............................................................................................................................21

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; EMPLOYEE BENEFITS
..............................................................................................................................................21
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .........................21
    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........................22
    C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ........................22
    D.    Contracts and Leases Entered into After the Petition Date ..............................................22
    E.    Employee Compensation and Benefits Programs ...............................23

Article VI............................................................................................................................23

PROVISIONS GOVERNING DISTRIBUTIONS.............................................................23
    A.    Distribution on Account of Claims and Interests Allowed as of the Effective Date.............23
    B.    Distributions on Account of Claims and Interests Allowed After the Effective Date ..........23

    C.      Delivery of Distributions ...................................................................................... **24**

**Article VII.** ......................................................................................................................... 24

**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS** ....... 25
    A.      Allowance of Claims and Interests ......................................................................... **25**
    B.      Prosecution of Objections to Claims ...................................................................... **25**
    C.      Estimation of Claims and Interests ........................................................................ **25**
    D.      Time to File Objections to Claims .......................................................................... **25**
    E.      Disallowance of Certain Claims ............................................................................. **25**

**Article VIII.** ....................................................................................................................... 26

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ............................................................ 26
    A.      Conditions Precedent to the Effective Date ........................................................... **26**
    B.      Substantial Consummation ..................................................................................... **26**

**Article IX.** .......................................................................................................................... 26

**INJUNCTION AND RELATED PROVISIONS** ............................................................................. 26
    A.      Discharge of Claims; Compromise and Settlement of Claims and Controversies. .......... **26**
    B.      Injunction ................................................................................................................ **27**
    C.      Setoffs and Recoupment ........................................................................................ **27**
    D.      Release of Liens ..................................................................................................... **28**

**Article X** ............................................................................................................................ 28

**RETENTION OF JURISDICTION** ............................................................................................ 28

**Article XI.** .......................................................................................................................... 29

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN** ................................................ 29
    A.      Modification of Plan .............................................................................................. **29**
    B.      Effect of Confirmation on Modifications ............................................................... **30**
    C.      Revocation of Plan ................................................................................................. **30**

**Article XII.** ......................................................................................................................... 30

**MISCELLANEOUS PROVISIONS** ........................................................................................... 30
    A.      Immediate Binding Effect ...................................................................................... **30**
    B.      Payment of Statutory Fees ..................................................................................... **30**
    D.      Successors and Assigns .......................................................................................... **31**
    E.      Entire Agreement ................................................................................................... **31**
    F.      Governing Law ....................................................................................................... **31**
    G.      Closing of Chapter 11 Case ................................................................................... **31**
    H.      Conflicts ................................................................................................................. **31**
    I.      Further Assurances ................................................................................................. **31**

Oleum Exploration, LLC (the "Debtor") and PAPCO, Inc. ("PAPCO" and, collectively with the Debtor, the "Proponents") propose this joint plan of reorganization (the "Plan") for the resolution of the outstanding claims against, and equity interests in, the Debtor. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan.

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtor's history, businesses, results of operations, historical financial information, projections and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**Article I.**
**DEFINED TERMS AND RULES OF INTERPRETATION**

A.    Defined Terms

The following terms shall have the following meanings when used in capitalized form herein:

1.    "Administrative Claim" means a Claim for costs and expenses of administration under sections 503(b) and/or 507(b) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor and (b) Accrued Professional Compensation (to the extent Allowed by the Bankruptcy Court).

2.    "Administrative Claims Bar Date" means the date that is the 30th day after the Effective Date.

3.    "Affiliate" means an affiliate of the Debtor as defined in section 101(2) of the Bankruptcy Code.

4.    "Allowed" means, with respect to any Claim or Interest, except as otherwise provided herein, a Claim or Interest allowed under the Plan, under the Bankruptcy Code, as applicable, or by a Final Order.

5.    "Assumed Executory Contract/Unexpired Lease List" means the list (as may be amended) of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be assumed pursuant to the Plan, as determined by the Debtor.

6.    "Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy

law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

7.     "Ballot" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

8.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

9.     "Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Pennsylvania or such other court having jurisdiction over the Chapter 11 Case.

10.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Case, and the general, local, and chambers rules of the Bankruptcy Court.

11.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

12.     "Cash" means the legal tender of the United States of America or the equivalent thereof.

13.     "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

14.     "Chapter 11 Case" means the chapter 11 case filed by the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

15.     "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

{8088639: }3

16.     "Claims Bar Date" means, as applicable, the later of (a) the deadline for filing Administrative Claims, claims of Governmental Units, any general bar date, and the applicable contract rejection damages bar date established pursuant to orders of the Bankruptcy Court, or (b) thirty (30) days after the Confirmation Date.

17.     "Clam Lake Field" means that property on which the Debtor conducts its oil and gas operations in Jefferson County, Texas comprised of the oil and gas leases known as McFadden State Lease and the McFadden Trust Lease.

18.     "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Case.

19.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

20.     "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

21.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22.     "Consolidated Entity" means the entity formed by the merger of the Debtor and Oleum Texas.

23.     "Cure Costs" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

24.     "Disclosure Statement" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

25.     "Disclosure Statement Order" means the order of the Bankruptcy Court approving the Disclosure Statement.

26.     "Disputed" means, with respect to any Claim or Interest, except as otherwise provided herein, a Claim or Interest that is not yet Allowed.

27.     "Distribution Agent" means the Debtor or any Entity or Entities chosen by the Debtor to make or to facilitate distributions required by the Plan.

28.     "Effective Date" means the date selected by the Proponents that is a Business Day on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to the

effectiveness of this Plan have been satisfied or waived, including the occurrence of the Production Threshold Date.

29.     "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

30.     "Equity Interest" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date.

31.     "Estate" means the estate created for the Debtor in the Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code.

32.     "Executory Contract" means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

33.     "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction including Courts in the State of Texas with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure (or the equivalent procedures under applicable Texas law), seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and  no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for  a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule including rules under Texas law, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

34.     "General Unsecured Claims" or GUC means any unsecured claim (other than an Administrative Claim or a Non-Tax a Priority Tax Claim) against the Debtor, including (a) the Claims arising from the rejection of Unexpired Leases and Executory Contracts to which a Debtor is a party, and (b) Claims arising from any litigation or other court, administrative or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by the Debtor related thereto.

35.     "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

36. "GUC Distribution" means those distributions made or to be made to Holders of Allowed General Unsecured Claims under the Plan.

37. "Holder" means an Entity holding a Claim or Interest.

38. "Impaired" has the meaning set forth in section 1124 of the Bankruptcy Code.

39. "Impaired Class" means a Class that is Impaired.

40. "Initial Distribution Date" means the date that is on or as soon as practicable after the Effective Date when distributions under the Plan shall commence for each Class entitled to receive distributions.

41. "Insider Loan Claims" means the loans advances and extensions of credit made by an Insider, specifically Scott Slater and Salvatore Checho, but excluding Class B interests, to or for the benefit of the Debtor prior to the Petition Date.

42. "Insider" means an insider as defined in section 101(31) of the Bankruptcy Code and shall include Scott Slater and Salvatore Checho.

43. "Interest" means Equity Interests.

44. "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

45. "Local Bankruptcy Rules" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Middle District of Pennsylvania.

46. "Non-Tax Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

47. "Oleum Texas" means Oleum Texas Exploration, LLC, a Pennsylvania limited liability company.

48. "Oleum Newco" means a Texas C corporation to be formed prior to the Effective Date or as soon thereafter as possible as successor in interest to the "Reorganized Debtor." The formal name of the entity to be formed may be changed upon incorporation.

49. "ORRI" shall mean an overriding royalty interest as defined under Texas law which is a mineral interest (and not an interest in Oleum Newco) that is given a percentage interest of gross production carved from the working interest, but not chargeable with any expenses of operation or production.

50. "Petition Date" means February 16, 2019.

51.     "Plan" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and/or the Bankruptcy Rules, including all exhibits and schedules hereto.

52.     "Production Threshold Date" means the twenty fifth day of the month following the first calendar month in which the Reorganized Debtor has produced more than 7,500 barrels of oil for such month.

53.     "Pro Rata" or "Pro Rata Share" means with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

54.     "Professional Fee Claim" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

55.     "Reorganized Debtor" means the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including Oleum Newco.

56.     "Retained Professional" means an Entity (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

57.     "Secured Claim" means a Claim (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a secured claim, but excluding any Claim filed or asserted by PAPCO which secured claim is separately treated under this Plan.

58.     "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

59.     "Unimpaired" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

{8088639: }7

60.    "United States Trustee" means the United States Trustee for Region 3.

61.    "Voting Deadline" means the date and time set forth in the Disclosure Statement Order by which votes to accept or reject the Plan, as applicable, must be actually received by the Notice and Claims Agent.

62.    "Voting Record Date" means the date established as the voting record date pursuant to the Disclosure Statement Order.

B.    Rules of Interpretation

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of this Plan; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (g) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (h) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) any effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; and (m) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Case under the Bankruptcy Court's CM/ECF system.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. Unless otherwise specified herein, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

3.    All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

{8088639: }8

4.      Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

**Article II.**
**ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND UNITED STATES TRUSTEE STATUTORY FEES**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of this Plan.

A.      <u>Administrative Claims</u>

1.      <u>General Administrative Claims</u>

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed General Administrative Claim or Professional Fee Claim and the Debtor agree to less favorable treatment with respect to such Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash: (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if a General Administrative Claim is Allowed after the Effective Date, on the date such General Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtor or the Reorganized Debtor, as the case may be; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided that Allowed General Administrative Claims that arise in the ordinary course of the Debtor's business during the Chapter 11 Case shall be paid in full in Cash in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice.

2.      <u>Professional Fee Claims</u>

(a)      <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims shall be filed no later than the first Business Day that is 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. Each of the Proponents of this Plan reserve the right to object to any Professional Fee Claims.

(b)     Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtor shall pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor or Reorganized Debtor (as applicable) after the Effective Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court. From and after the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor or Reorganized Debtor (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

3.     Administrative Claims Bar Date

All requests for payment of Administrative Claims that were not otherwise incurred in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtor no later than the Administrative Claims Bar Date. If a Holder of an Administrative Claim (other than for Cure Costs or Professional Fee Claims) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, its Estate, or the Reorganized Debtor, and such Administrative Claim shall be deemed compromised, settled, and released as of the Effective Date.

The Reorganized Debtor, in consultation with PAPCO, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtor or the Reorganized Debtor, as applicable, may also object to any Administrative Claim.

4.     Priority Tax Claims

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor or Reorganized Debtor, as applicable, and such Holder; provided that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Claim payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

5.      United States Trustee Statutory Fees

The Debtor and the Reorganized Debtor, as applicable, shall pay all United States Trustee quarterly fees under 28 U.S.C § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's or Reorganized Debtor's business (or such amount agreed to with the United States Trustee or ordered by the Bankruptcy Court), for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first including dismissal upon substantial consummation of the Plan.

## Article III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      Classification of Claims

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Claims and Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Non-Tax Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Claims of Patterson Services, Inc. | Impaired | Entitled to Vote |
| 3 | Secured Claim of Saber Drilling Fluids, LLC | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5A | Class A Equity Interests | Impaired | Entitled to Vote |
| 5B | Class B Equity Interests | Impaired | Deemed to Reject |
| 6 | PAPCO Claim | Impaired | Entitled to Vote |
| 7 | Insider Loan Claims | Impaired | Entitled to Vote |
| 8 | Other Secured Claims | Impaired | Entitled to Vote |

The Debtor reserves the right to seek to reclassify any claims of creditors alleged to be secured but not designated in this Plan as a Secured Claim, and the treatment to such Claims shall be in accordance with an applicable order of the Bankruptcy Court.

A.      Treatment of Claims and Interests

1.      Class 1 – Non-Tax Priority Claims

{8088639: }11

(a)    Classification: Class 1 consists of all Non-Tax Priority Claims.

(b)    Treatment: Except to the extent that a Holder of an Allowed Non-Tax Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Non-Tax Priority Claim, each Holder of such Allowed Non-Tax Priority Claim shall be paid in full in Cash on or as reasonably practicable after (i) the Effective Date, (ii) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

Voting: Class 1 is Unimpaired and Holders of Class 1 Non-Tax Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Non-Tax Priority Claims are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Secured Claim of Patterson Services, Inc.</u>

(a)    Classification: Class 2 consists of the Secured Claim of Patterson Services, Inc.

(b)    Treatment: Except to the extent that the Holder of the Class 2 Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of such Secured Claim, on or as soon as reasonably practicable after the Effective Date, the Holder of the Class 2 Claim shall be paid as follows: cash in the amount of $23,000.00 on or before the Effective Date and monthly payments thereafter in the amount of $4,000.00 until the Allowed Class 2 Claim is paid in full. The Holder of the Class 2 Claim shall retain its liens and security interests to secure the obligation provided for herein until such Claim has been fully satisfied.

(c)    Voting: Class 2 is Impaired, and the Holder of Class 2 Claim is entitled to vote to accept or reject the Plan.

3.    <u>Class 3 – Secured Claim of Saber Drilling Fluids, LLC</u>

(a)    Classification: Class 3 consists of the Secured Claim of Saber Drilling Fluids, Inc.

(b)    Treatment: Except to the extent that the Holder of the Class 3 Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of such Secured Claim, on or as soon as reasonably practicable after the Effective Date, the Holder of the Class 3 Claim shall be paid in Cash as follows: $24,000.00 on or as reasonably practicable after the Effective Date and monthly payments thereafter over a period not to exceed eighteen months from the Effective Date, together with interest at the rate of four (4%) percent per annum. The Holder of the Class 3 Claim shall retain its liens and security interests to secure the obligation provided for herein until such Claim has been fully satisfied.

(c)     Voting: Class 3 is Impaired, and the Holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

4.     Class 4 – General Unsecured Claims

(a)     Classification: Class 4 consists of all General Unsecured Claims.

(b)     Treatment: Except to the extent that a Holder of an Allowed General Unsecured Claim ("GUC") agrees to a less favorable treatment of its Allowed General Unsecured Claim, in full and final satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, Pro Rata, Cash totaling 100% of such Allowed General Unsecured Claim as follows: (a) fifteen (15%) percent on or as soon as reasonably practicable after the Effective Date, and (b) the balance in monthly installments commencing in the second month following the Effective Date over a period not to exceed thirty months. The Reorganized Debtor, in its capacity as Distribution Agent, shall make a GUC Distribution monthly until Allowed General Unsecured Claims have been fully satisfied.

(c)     Voting: Class 4 is Impaired, and Holders of Class 4 General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.     Class 5A – Class A Equity Interests

(a)     Classification: Class 5A consists of the Class A Equity Interests in the Debtor held by Salvatore Checho and Scott Slater.

(b)     Treatment: On the Effective Date, all Class A Equity Interests shall vest, provided that each Holder thereof has waived and relinquished such Holder's Claim against the Debtor for Insider Loan Claims made by such Holder to or for the benefit of the Debtor, which shall constitute such Holder's new value contribution under the Plan. Confirmation shall operate to extinguish all Insider Loan Claims.

(c)     Voting: Class 5A is Impaired and is entitled to vote to accept or reject the Plan.

Class 5B – Class B Equity Interests

(a)     Classification: Class B consists of the Class B Equity Interests in the Debtor.

(b)     Treatment: On the Effective Date, Class B Equity Interests shall be canceled and extinguished, and the Holders of such Class B Equity Interests shall neither receive nor retain any property under the Plan.

(c)     Voting: Class 5B is conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

6.   Class 6- PAPCO Claim

(A)   Classification:  Class 6 consists of the PAPCO Claim which shall be deemed to hold a duly perfected and valid and existing secured claim under its Collateral Security Mortgage granting a lien on the oil and gas leases known as the McFadden Trust Lease and the McFadden State Lease.

(B)   Treatment:  The Plan evidences a settlement and compromise between and among the Debtor, Oleum Texas and PAPCO.  Except as otherwise provided herein, from and after the Effective Date, PAPCO shall receive the following treatment:

a.   Commencing July 1, 2020 or the Confirmation Date, whichever is later, the PAPCO claim shall be Allowed in the amount of $10,000,000 and shall accrue interest at the rate of four (4%) percent per annum, compounded daily as provided below (the "Allowed PAPCO Claim"):

i.   Amount = Principal x $(1+.04/360)^{days}$ with days being the number of days elapsed until the next payment.

b.   Upon assignment of the 20% ORRI, PAPCO shall release its Collateral Security Mortgage on any assets of the Debtor.

c.   Commencing on July 1, 2020 or the Confirmation Date, whichever is later,  the Reorganized Debtor shall unconditionally and irrevocable assign to PAPCO a twenty (20%) percent ORRI, in form and substance satisfactory to  PAPCO, which shall (1) be superior to any future financing obtained by the Reorganized Debtor, (2) constitute the ownership of a mineral interest in the Debtor's property known as the Clam Lake Field in Jefferson County, Texas, and (3) apply to any renewals, extensions or substitutions of any future oil and gas leases in the Clam Lake Field which ORRI shall be duly filed and recorded under Texas law. The ORRI shall terminate upon payment in full of the agreed-upon Allowed Claim of PAPCO as defined in ¶6 but over a period no longer than 20 years plus lives in being to the maximum extent permitted under Texas law and the Rules against Perpetuities. The ORRI is not chargeable with any of the expenses of operation or production.

d.   On the Confirmation Date, all funds maintained by the Debtor's counsel in its IOLTA account pursuant to an Order of the Bankruptcy Court shall be distributed to PAPCO and applied, dollar for dollar, to reduce the amount of the PAPCO Claim.

e.   The Reorganized Debtor shall seek the assistance of its accounting firm, MacFarlane and Associates, in forming Oleum Newco.

f.      As set forth in the Plan, Oleum Texas shall merge with and into the Debtor, which shall be the surviving entity, and the stock or assets of the Consolidated Entity (as determined by the Proponents) shall be transferred to Oleum Newco pursuant to the Plan.

g.      Oleum Newco shall issue ten (10%) percent of its issued and outstanding equity stock interests to PAPCO (the "PAPCO Stock"). Except in the event of payment in full of the Allowed PAPCO Claim within 120 days pursuant to subdivision (s) below, PAPCO shall be entitled to retain its 10% equity stock interest notwithstanding later payment in full of the Allowed PAPCO Claim and notwithstanding any future bankruptcy proceedings of Oleum Newco, its successors and assigns.

h.      Oleum Newco shall issue ten (10%) percent of its issued and outstanding equity stock interests to Daniel Pierce, who is an existing employee of the Debtor and the brother of PAPCO's principal, Darryl Pierce. Except for payment in full of the Allowed PAPCO Claim within 120 days pursuant to subdivision (s) below, Dan Pierce shall be entitled to retain its 10% equity stock interest notwithstanding later payment in full of the Allowed PAPCO Claim, and notwithstanding any future bankruptcy proceedings of Oleum Newco, its successors and assigns. The rights of Dan Pierce hereunder shall continue to his heirs, successors and assigns.

i.      The board of directors of Oleum Newco shall consist of three members, one of whom will be designated by PAPCO, one of whom will be designated by Daniel Pierce, and one of whom will be designated by the, Salvatore Checho and Scott Slater.

j.      At such time as the PAPCO Claim has been fully satisfied, PAPCO shall relinquish its seat on the board of directors of Oleum Newco, which shall thereafter be reconstituted in accordance with the by-laws of Oleum Newco.

k.      Until the Allowed PAPCO Claim is paid in full, the by-laws of Oleum Newco and any Charter or Certificate of Incorporation including any amendments shall be approved by PAPCO.

l.      With respect to dividends or distributions issued to the shareholders of Oleum Newco prior to the date on which the Allowed PAPCO Claim has been fully satisfied, PAPCO shall receive a matching distribution, which shall be applied, dollar for dollar, to reduce the amount of the PAPCO Claim. PAPCO will be entitled to a matching distribution in addition to any distribution it may receive as a 10% shareholder and any payments it received under the ORRI.

m.      The PAPCO Claim may be prepaid at any time without penalty or premium.

n.      As a condition to the occurrence of the Effective Date, the Bankruptcy Court or a court of competent jurisdiction of the State of Texas shall adjudicate by a

consent order submitted by the Proponents the continued validity of the McFadden State Lease. Such determination by either Court shall be made pursuant to Texas law. Such determination and Final Order shall bind Oleum Texas as well as the Reorganized Debtor.

  o. As soon as reasonably practicable following the entry of the consent order described in the preceding paragraph, PAPCO, Oleum Texas, the Debtor/Reorganized Debtor and Scott Slater shall dismiss all litigation pending in the courts of the State of Texas against each other with prejudice.

  p. Subject to the occurrence of the Effective Date, all litigation pending in the Bankruptcy Court shall be deemed settled, and the Reorganized Debtor, Oleum Texas, PAPCO, and Scott Slater shall voluntarily dismiss all claims against each other with prejudice.

  q. The Proponents shall work in good faith to confirm and implement the Plan as soon as practicable.

  r. Upon the satisfaction of the PAPCO Claim, PAPCO shall execute and deliver such documents and instruments as are necessary or appropriate to release the ORRI.

  s. Notwithstanding the foregoing terms and provisions, in the event that the Allowed PAPCO Claim, together with accrued interest, is fully satisfied on or within 120 days from the Confirmation Date, the provisions contained in subparagraphs c., g., h., i., j. and k. shall be of no further force or effect. In all other respects, all other terms and provisions hereof shall remain in full force and effect. To clarify, if the Allowed PAPCO Claim is paid in full within 120 days, any payments previously made to PAPCO under the ORRI by virtue of its 10% shareholder interest. and matching distributions previously made to PAPCO are not rescinded. The satisfaction of PAPCO's allowed claim within 120 days of the Confirmation Date will be effective as of the date of such satisfaction (not retroactive). The referenced provisions to be affected are subsection (c) [the ORRI]; (g) [10% stock to PAPCO]; (h) [10% equity interest to Dan Pierce]; (k) [PAPCO approval of by-law]; and (m) [matching dividends]. If the Allowed PAPCO Claim is not paid in full within 120 days, both PAPCO and Dan Pierce shall each retain their respective 10% equity interests in Oleum Newco.

Subject to the approval of Oleum Newco's board of directors, Oleum Newco may issue new equity securities or engage in one or more financing transactions, and any dilution resulting from the issuance of new equity securities shall be ratable among the shareholders. The existing and any new shareholders shall be bound by the Confirmed Plan.

(C) Voting: The Holder of the PAPCO Claim is Impaired and is entitled to vote to accept or reject the Plan.

(D) The entry of the Confirmation Order shall constitute approval of the settlement and compromise of all litigation involving PAPCO pursuant to Bankruptcy Rule 9019, subject to the occurrence of the Effective Date.

{8088639: }16

7. Class 7 – Insider Loan Claims

(a) Classification: Class 7 consists of Insider Loan Claims based on loans, advances or extensions of credit made by the Holders of Interests in the Debtor prior to the Petition Date.

(b) Treatment: Class 7 Claims shall be deemed to be waived and extinguished as of the Effective Date and shall not receive any distribution under the Plan, which waiver shall constitute a new value contribution by the Holder of each Class 7 Claim.

(c) Voting: The Holders of Class 7 Claims are Impaired and are entitled to vote to accept or reject the Plan.

8. Class 8 – Other Secured Claims

(a) Classification: Class 8 consists of Allowed Secured Claims, including Claims arising under Chapter 56 of the Texas Property Code, which are not otherwise classified hereunder.

(b) Treatment: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of such Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, Pro Rata, Cash totaling 100% of such Other Secured Claim as follows: (a) fifteen (15%) percent on or as soon as reasonably practicable after the Effective Date, and (b) the balance in monthly installments commencing in the second month following the Effective Date over a period not to exceed twenty four months.

(c) Voting: The Holders of Class 8 Claims are Impaired and entitled to vote to accept or reject the Plan.

B. Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

C. Acceptance or Rejection of the Plan

1. Deemed Acceptance or Rejection of Plan

Holders of Claims in Class 1 are Unimpaired under the Plan and are therefore conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Interests in Class 5B are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

{8088639: }17

2. Voting Classes

Each Holder of an Allowed Claim or Interest in Classes 2, 3, 4, 5A, 6 and 7 are entitled to vote to accept or reject the Plan.

3. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

D. Nonconsensual Confirmation

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims. The Debtor shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

E. Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

**Article IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A. General Settlement of Claims

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims and Equity Interests and controversies resolved pursuant to the Plan. Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B. Restructuring Transactions

1. Plan Implementation

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or

appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan (including a division order and Assignment of ORRI with respect to the PAPCO Claim) and (c) all other actions that the Reorganized Debtor determines are necessary or appropriate.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

2.     <u>Merger of Debtor and Oleum Texas</u>

On the Effective Date, Oleum Texas shall be merged with and into the Reorganized Debtor pursuant to section 1123(a)(5)(c) of the Bankruptcy Code and a plan of merger to be filed with the Bankruptcy Court. As a result of such merger, any intercompany claims between the Debtor and Oleum Texas shall be extinguished.

3.     <u>Transfer of Membership Interests or Assets to Oleum Newco</u>

On or as soon as reasonably practicable after the Effective Date, the Consolidated Entity as Reorganized Debtor shall become a C Corporation, Oleum Newco, a Texas Corporation.

C.     <u>Corporate Existence</u>

Except as otherwise provided in the Plan and/or the Oleum Texas plan of merger, the Debtor shall continue to exist as of the Effective Date as a limited liability company with all the powers of a limited liability company pursuant to the applicable law of the jurisdiction in which the Debtor is formed, subject to the transfer of assets to Oleum Newco

D.     <u>Vesting of Assets in the Reorganized Debtor</u>

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in the Estate, the Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in Reorganized Debtor and, thereafter, Oleum Newco, free and clear of all Liens, Claims, charges, or other encumbrances; provided that, on the Effective Date, the Reorganized Debtor and Oleum Newco may forever waive, relinquish, and release any and all Causes of Action the Debtor and its Estate had, have, or may have had that arise under section 547 of the Bankruptcy Code against any Entity that is being rendered Unimpaired under the Plan and any Entity with which the Debtor is conducting and will continue to conduct business on and after the Effective Date. On and after the Effective Date, except as otherwise provided in the Plan, Oleum Newco may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims,

Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.    Sources for Plan Distributions

The Debtor (or the Reorganized Debtor) shall fund distributions under the Plan with Cash on hand, including Cash from operations. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtor in its capacity as the Distribution Agent.

From and after the Effective Date, the Reorganized Debtor shall have the right and authority, without further order of the Bankruptcy Court, to raise additional capital and obtain additional financing as the board of directors deems appropriate.

F.    Exemption from Certain Transfer Taxes and Recording Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor, the Consolidated Entity, Oleum Newco, or any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Reorganized Debtor or the Consolidated Entity; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means, including the ORRI; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

G.    Managers and Officers of the Reorganized Debtor

The board of directors shall consist of one person designated by PAPCO, one person designated by Salvatore Checho and Scott Slater, and one person designated by Daniel Pierce.

H.    Preservation of Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the

Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action. The Debtor or Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan,** and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

Notwithstanding any provision in this Plan or any Order entered in the Chapter 11 Case, the Debtor and Reorganized Debtor forever waive, relinquish, and release any and all Causes of Action the Debtor and its Estate had, have, or may have that arise under sections 544, 547, 548 and 549 of the Bankruptcy Code against any Entity that is being rendered Unimpaired under the Plan and any Entity with which the Debtor is conducting and will continue to conduct business on and after the Effective Date.

**Article V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; EMPLOYEE BENEFITS**

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein, each of the Debtor's Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court will be deemed assumed as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except any Executory Contract or Unexpired Lease that is the subject of a separate motion or notice to reject (including a motion or notice pursuant to which the requested effective date of such rejection is after the Effective Date) filed by the Debtor, and pending as of the Confirmation Hearing that previously expired or terminated pursuant to its own terms.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party on or prior to the Effective Date, shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not

{8088639: }21

entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtor or Reorganized Debtor, as applicable, reserve the right to alter, amend, modify, or supplement the Executory Contracts and Unexpired Leases identified on the Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List prior to the Effective Date on no less than three (3) days' notice to the non-Debtor counterparty thereto.

B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have assented to such assumption.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Notwithstanding the foregoing, the Debtor and the Reorganized Debtor will continue to honor all post petition and post-Effective Date obligations under any assumed Executory Contracts and Unexpired Leases in accordance with their terms, regardless of whether such obligations are listed as a cure amount, and whether such obligations accrued prior to or after the Effective Date, and neither the payment of cure nor entry of the Confirmation Order shall be deemed to release the Debtor or the Reorganized Debtor from such obligations.

C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtor's Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. **Any Proofs of Claim arising from the rejection or repudiation of the Debtor's Executory Contracts and Unexpired Leases that are not timely filed shall be deemed disallowed.** All Allowed Claims arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with this Plan.

D.    Contracts and Leases Entered into After the Petition Date

{8088639: }22

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor in the ordinary course of its business. Accordingly, such contracts and leases (including any Assumed Executory Contracts and Unexpired Leases) that have not been rejected as of the Confirmation Date will survive and remain unaffected by entry of the Confirmation Order.

E.     Employee Compensation and Benefits Programs

Subject to the provisions of the Plan, all employee compensation and benefits programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.

**Article VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.     Distribution on Account of Claims and Interests Allowed as of the Effective Date

Except as otherwise provided in the Plan or a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date shall be made on or as soon as reasonably practicable following the Effective Date, *provided* that (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Allowed Priority Tax Claims, unless otherwise agreed, shall receive (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable nonbankruptcy law; (ii) such other treatment as may be agreed to by such Holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court; or (iii) treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

B.     Distributions on Account of Claims and Interests Allowed After the Effective Date

1.     Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made as soon as practicable after a Disputed Claim becomes an Allowed Claim.

2.     Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect

{8088639: }23

to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

C.    Delivery of Distributions

    1.    Delivery of Distributions in General

    Except as otherwise provided in the Plan, the Reorganized Debtor shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtor's records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; provided that the manner of such distributions shall be determined at the discretion of the Reorganized Debtor.

    2.    Minimum Distributions

    Notwithstanding anything herein to the contrary, the Reorganized Debtor shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down).

    3.    Undeliverable Distributions

        (a)    Holding of Certain Undeliverable Distributions

    If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

    4.    Compliance with Tax Requirements/Allocations

    In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms it deems reasonable and appropriate.

**Article VII.**

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

A.    <u>Allowance of Claims and Interests</u>

In the event that the Effective Date does not occur, all rights of all parties shall be unaffected and rights reserved. subject to the Term Sheet executed on February 25, 2020 by The Debtor, Oleum Texas, Scott Slater, Salvatore Checho and PAPCO.

B.    <u>Prosecution of Objections to Claims</u>

Except as otherwise specifically provided in the Plan, the Reorganized Debtor shall have the sole authority (a) to file, withdraw, or litigate to judgment objections to Claims or Interests; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the distribution schedule to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    <u>Estimation of Claims and Interests</u>

Before or after the Effective Date, the Debtor or Reorganized Debtor, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim.

D.    <u>Time to File Objections to Claims</u>

Any objections to Claims shall be filed before the Chapter 11 Case is closed.

E.    <u>Disallowance of Certain Claims</u>

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or an order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Reorganized Debtor.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions on account of such Claims,**

**unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order or scheduled as a liquidated claim.**

## Article VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.  Conditions Precedent to the Effective Date

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.  The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.  The Confirmation Order shall have been entered, shall be in full force and effect, and shall be a Final Order.

3.  All documents and agreements necessary to implement the Plan shall have been executed and tendered for delivery. All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied or waived substantially concurrently with the occurrence of the Effective Date).

4.  All material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained.

5.  The Production Threshold Date shall have occurred.

B.  Substantial Consummation

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## Article IX.
## INJUNCTION AND RELATED PROVISIONS

A.  Discharge of Claims; Compromise and Settlement of Claims and Controversies.

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests and Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtor the

Reorganized Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against the Debtor and its Estate and Causes of Action against other Entities.

B.     Injunction

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (A) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (B) HAVE BEEN RELEASED OR EXCULPATED PURSUANT TO THE PLAN; OR (C) ARE OTHERWISE DISCHARGED, SATISFIED, STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO, ANY DISCHARGED, RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES.**

C.     Setoffs and Recoupment

Except as otherwise provided herein, the Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior

to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); provided that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action.

In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any Claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder has timely filed a Proof of Claim with the Bankruptcy Court preserving such setoff or recoupment in such Proof of Claim.

D.    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtor or the Reorganized Debtor that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtor shall be entitled to make any such filings or recordings on such Holder's behalf.

**Article X**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6. Adjudicate, decide or resolve any and all matters related to Causes of Action;

7. Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8. Resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims;

9. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

11. Enter an order or final decree concluding or closing the Chapter 11 Case.

## Article XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

A. <u>Modification of Plan</u>

Subject to the limitations contained in the Plan, the Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to be exercised solely jointly (a) amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (b) after the entry of the Confirmation Order, the Reorganized Debtor or Oleum Newco, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of

the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    Revocation of Plan

Subject to the conditions to the Effective Date, the Proponents reserve the right, to be exercised solely jointly, to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans of reorganization.

## Article XII.
## MISCELLANEOUS PROVISIONS

A.    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, the Consolidated Entity and Oleum Newco, and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

B.    Payment of Statutory Fees

All fees payable pursuant to section 1930(a) of Title 28 of the U.S. Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code or as agreed to by the United States Trustee and the Reorganized Debtor, shall be paid when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed or closed, whichever occurs first. The Reorganized Debtor shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee until the entry of a final decree pursuant to Bankruptcy Rule 3022 to close the Chapter 11 Case.

C.    Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with

Case 5:19-bk-00664-MJC    Doc 438    Filed 04/22/20    Entered 04/22/20 11:02:54    Desc
Main Document    Page 32 of 35

respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date, but the parties (Debtor, Oleum Texas, Scott Slater, Salvatore Checho and PAPCO) remain subject to the February 25, 2020 Term Sheet.

D.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

E.      Entire Agreement

On the Effective Date, the Plan shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

F.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters except that Texas law shall govern the rights of real property interests and secured claims in the State of Texas.

G.      Closing of Chapter 11 Case

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

H.      Conflicts

To the extent that any provision of the Disclosure Statement, or any other order referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision in the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

I.      Further Assurances

{8088639: }31

The Debtor, Reorganized Debtor, the Consolidated Entity, Oleum Newco, all Holders of Claims or Interests receiving distributions pursuant to this Plan, and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

Dated: April 20, 2020

KURTZMAN | STEADY, LLC

By: _____
    Jeffrey Kurtzman, Esquire
    401 S. 2nd Street, Suite 200
    Philadelphia, PA 19147
    Telephone: (215) 839-1222
    Email: kurtzman@kurtzmansteady.com

Attorneys for Debtor and Debtor-in-Possession

-  and –

WOODS OVIATT GILMAN LLP

By: _____
    William F. Savino, Esquire
    Bernard Schenkler, Esquire
    1900 Main Place Tower
    350 Main Street
    Buffalo, NY 14202
    Telephone: (716) 248-3200
    Email: wsavino@woodsoviatt.com
            bschenkler@woodsoviatt.com

Attorneys for PAPCO, Inc.

shall control), and corporate governance matters except that Texas law shall govern the rights of real property interests and secured claims in the State of Texas.

## G. Closing of Chapter 11 Case

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

## H. Conflicts

To the extent that any provision of the Disclosure Statement, or any other order referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision in the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

## I. Further Assurances

The Debtor, Reorganized Debtor, the Consolidated Entity, Oleum Newco, all Holders of Claims or Interests receiving distributions pursuant to this Plan, and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

Dated: April 20, 2020            **KURTZMAN | STEADY, LLC**

By:

    Jeffrey Kurtzman, Esquire

    401 S. 2nd Street, Suite 200

    Philadelphia, PA 19147

    Telephone: (215) 839-1222

    Email: kurtzman@kurtzmansteady.com

Attorneys for Debtor and Debtor-in-Possession

- and --

**WOODS OVIATT GILMAN LLP**

By:

    William F. Savino, Esquire

    Bernard Schenkler, Esquire

    1900 Main Place Tower

    350 Main Street